Good morning, Your Honor. Stan Riney for the petitioner. This case has to do with a credible fear finding in an asylum case. Counsel, my own focus on this case is I can't figure out whether she was arrested or she was not arrested because she tells different stories about whether she was arrested at different times. Now, I know all about being tired when you get off the airplane, because I fly here from Alaska. It's really far away. It's further than New York. But I think even really, really tired, I remember whether I was arrested and mistreated in jail. And that's exactly my point, Your Honor. You would know. Who wouldn't? A 20-year-old Iraqi who is having different kinds of translations than you are. I'm an Iraqi, but I've been 20. Even at 20, I would know whether I'd been arrested and mistreated in jail. She didn't say that she was mistreated. Sometimes she did. Sometimes she didn't. No, she said that her father had been mistreated in jail. If you look at the testimony throughout here very carefully and you go through it, she testified consistently that she was interrogated overnight. The problem was that the government attorney and the judge in question wanted her to use the specific word, arrest or detention. And she kept saying over and over again, I was interrogated. And after being pressured for a while by the judge, she said, yes, I was arrested. That's not really my big problem because these are technical words. Who knows what law enforcement people mean when they say detained as opposed to arrested, unless you're in that business. But whether it's you or your father, that you would know. I don't follow your question, sir. Well, sometimes it reads like her father is the one that was getting arrested or detained or mistreated or whatever it was by the security people. And sometimes it reads like it was her. Are you saying that was a separate incident? That was a separate incident. I don't know. There were two events. There were two events. I think I understand what your question is. There was a time that they were asking the question about your father, your father, and she used the word I or it was I. And that's the concern that was. OK, but what I have. Here's the problem. She comes she comes in and she gets the sequence is correct. She gets the airport interview, right? That's correct. OK. And in that they say, would you be harmed if you return? She says the government might harm me because I have left Nasser a silent. OK, then she has the the initial interview, the credible period. And in that one, she says, my father was seriously hurt and almost died in an accident involving the police. And I was arrested and detained by the Iraqi  police. Now, that sounds like it's is that the same incident or different incidents? That's the incident that she was referring to when she was detained overnight. OK, but she says my father was seriously hurt and almost died in an accident. So that's just simply referring to the accident. And then she was because that's when the car turned over because the cops that's right. OK, so that relates to her. But there's no reference in that to her father's prior detention and torture that she later then features in her application for asylum, which is quite detailed about the 98 event with her father, OK, where he was detained, beaten and threatened. That's all correct. OK, from the taken from the printing office. And then when she but she doesn't in that talk at all about the circumstances of the auto accident. That's correct. OK. And I think that the IJ was saying, well, wait a minute. Why weren't you talking about your father's detention, you know, all of the stuff that you put in your asylum application? And then when you do your asylum application, you omit that what you responded on the credibility of a credible fear. And why aren't they all together in the asylum application, for example? Because she didn't have an attorney at at a credible at the credible fear. No, but she did and didn't. And but did come up with this. So why, in other words, when she did have an attorney, what why wouldn't it be then carried forward into the asylum application? Nothing inconsistent about what she said. She just didn't say she didn't tell all of the same things at at different times. You didn't she didn't mention some things that could hardly go without mentioning. And you don't need a lawyer to tell the truth. And the lawyer deals with the legal end of things. But the lawyer has no personal knowledge of what happened in Iraq. I totally agree with you, Your Honor. I don't believe, though, that your characterization is correct, that that she was not telling the truth. What was happening was she was not telling all the same things at different times. And I think it's important. That's exactly different stories about the horrible things that happened. But if horrible things happened, you'd expect the same story. Well, I don't know what to tell you. She looked at everything she said was true. If I had a client come in to me and one time he tells me when the cops busted me at the corner of 2nd and Cushman, they beat me up. And then I read the police report and he says in the police report, the cops arrested me peacefully, but they beat me up in the car. And then I interview him in my office and he says they arrested me peacefully and the car was peaceful, but they beat me up later in jail. And then he testifies. I wasn't telling anybody the whole thing. Actually, they beat me up each of those times. That person would not be credible. I totally agree with you. In my mind, that's not what happened here. You're talking about telling the same story. You're talking about telling the same scenario differently. I'm thinking it is what happened here. There are several bad things that happened. And this one, as you mentioned, is a different one. Maybe part of the question is, what were the questions that were being asked to which she was responding if you're telling us that there was a reason for giving partial responses at the different times? In the initial interview, they asked, were you arrested? She said no. And they asked, were you harmed? And she said no. At the credible fear interview, we don't know what was asked. It's a printed question and it's done in detention. And in many cases, because I do a lot of these, the answers are very perfunctory depending on how overworked the individual that's working is. We don't know what was asked, but we can read that question and I can pull it out here. I believe it asks, I'm going to go from memory, it asks, have you or any member of your family ever been mistreated or threatened by anyone in any country? So why in response to that wouldn't she give the whole works? She answered the you. But not any member of the family. First off, we don't know what that question was specifically asked. They're supposed to read it to her. This is not a transcript. This is somebody writing what was said, and I believe paraphrasing based on these questions. Again, she's 20 years old. That may seem old for a woman in our society. This is a woman that's never been away from home, that just got there, is in detention, and she also indicated she had an Arabic interpreter, although I don't think the problem there was one of interpreting words, but I don't know whether there was some confusion there as well. She indicated that the interpreter was Arabic, but not Iraqi. And I think the best example of that is that I recently went to Ireland, and they speak English too, but there were times when I couldn't understand a word that was being said, and that happens here. I'm not, I can't point to any particular words, but I do think that it's unreasonable to expect a 20-year-old who has lived at home, who is scared to death, to go in and answer questions as if she's prepared for an asylum. I mean, she didn't come here with a scripted asylum application. She came here as a frightened young girl that answered the question and answered it truthfully. She didn't answer it as completely as... What do we do with the fact that she did lie about the smuggler, about where she came from? And I think that is very reasonable under the circumstances. The smuggler, first of all, it had absolutely nothing to do with the merits of her case. Well, it doesn't go to the heart, but I do weigh in on whether she's lying on these other things. I agree. She was also, again, a frightened young lady that's told by a smuggler that if you tell him where you came from, which is obviously going to possibly implicate him in some crime, I'm going to harm your family. You're not going to see him again. She remedies that situation shortly thereafter. And, I mean, it makes sense to me that a person in her position would do what the smuggler said in order to protect her family. What's our standard of review of the determination that was made below? Is whether there is substantial evidence to support... Their determination. The determination of the immigration judge. Again, I would just simply state that it's not a situation where she says the sky was dark and later says the sky was light. It's that she tells, depending on the question, different parts of what ends up being the overall story that was used in order to request asylum. May it please this Court, my name is Robin Bly. I represent the Attorney General in this matter. I just want to point out a couple of things on the credible fear interview sheet on page 138. When she was asked, opposing counsel is trying to indicate that maybe she wasn't asked a specific question. Have you or any member of your family ever been mistreated or threatened by anyone in any country to which you may be returned? It seems that she was asked that question or some form of that question because she talks about her father being hurt, her brother having problems with Muslims, and herself. If it had just been about her, it's not really clear why. I had that same reaction, but then I looked at it a little more carefully because it says, have you or a member of your family ever been mistreated and so on. So she talks about her family being Catholic. That was prelude to then what happened to her. So it's not, in other words, that's setting the scene in which she then says that she was arrested and detained by the Iraqi police about that incident. So it's not clear that she was talking about her father necessarily. And then my brother and I were told by other Muslims and so on. So she's relating them all to herself. So I think it's a little tough to say, well, that we can infer from those responses she was asked to focus on things that might have happened only to her father in a circumstance where she personally wasn't involved. It's neutral, it seems to me. It also indicates right before that question that asylum officers are to ask the following question. I'm not sure we presume it or not. I don't presume, I find it hard to presume that if the, there's no misstatement in this, there's an omission. So if that's what substantial evidence depends on in this case, I'm not sure our cases permit that. Well, Your Honor, there is a big omission, though. The fact that her father was supposedly incarcerated or held by Iraqi authorities for 40 days, which she failed to mention at all, and which was central to her asylum. Well, I understand, but if that's the, if the question was asked. I had thought you were pointing to something else. I had thought what you were pointing to was 209, she says, her father was detained and beaten, doesn't mention an arrest. 138, she says, I was arrested and detained by the police. 134, have you ever been arrested? No. I thought that's what you were getting at. Well, Your Honor, that was one of my points. She was kind of all over the place about whether she had been arrested or detained. Another time she said she was interrogated almost all night. Of course, we have cases where the question is subject to our opinions whether somebody's stop is an arrest. It's hardly a term of art. That may be true, but Your Honor, I think when they asked her to define what an arrest was, I think she says where a police officer takes a person to the police station. And then she later testified that she was taken to a police station by police officers where she was detained and interrogated overnight. By her own definition, that's an arrest. What would be her motivation for saying it wasn't an arrest, other than a confusion about language? What would she gain by saying she wasn't arrested? I don't know, Your Honor. Doesn't that sort of weigh into a credibility evaluation, whether it's material or not? Well, Your Honor, it may, but I mean... Tripping her up, it sounds like it's tripping her up on labels as opposed to for the sake of saying, you know, maybe I wasn't there, so that's why we give deference. But, you know, using the term arrest, detention, interrogation, those mean something to us as lawyers and Americans. But she was pretty insistent and got very frustrated on the record as to what she was being asked to say. She was confronted with it, and she, at least my reading of the transcript, and granted it's a cold transcript, seemed genuinely frustrated that she wasn't communicating, not that she was trying to obfuscate. Well, Your Honor, I think she was asked, if I remember correctly, she was asked if she was harmed or arrested or detained at various times throughout the record. And really, she didn't say anything about that until the government attorney on cross-examination said to her, didn't you claim in your credible fear interview that you were taken into custody following your father's car accident? And no time before that, she indicated that she had been taken into custody by the police. Well, but what's the problem? She said, you know, we've just looked at where she said in the credible fear interview the circumstances, and when she understood in the hearing what was being asked, she didn't come up with a new story. She now just told about it, but she was, it seems to me, hung up on the terminology. So, again, I don't understand what her motivation is to lie. It's to her advantage to be saying that she'd been arrested. She could have made it sound a lot worse than apparently she was being asked to make it sound like. I mean, I can't speak to that, Your Honor. Well, but doesn't that go to the materiality and whether it really is a material inconsistency? Well, Your Honor, I mean, I don't know what. Because she doesn't agree with the words. It's not as if she's inventing a new incident. It may, Your Honor, but I don't know exactly what her motivation was. I mean, it would be pure speculation on my part to be here. Well, it's pure speculation on anybody's part. I mean, it's speculation on the part of the IJ as to why she would be doing it. But certainly, if I'm sitting on a jury and going back and forth trying to figure out whether somebody's lying or not, I would certainly kind of weigh in my mind of what would she gain by trying to say she wasn't an arrestee. Well, Your Honor, I think that the immigration judge's decision was not solely based on this one aspect. It was also based on the fact that in her credible fear interview, and in that credible fear interview, it indicates that the asylum officer should have told her, you should plan to tell me all your story because this may be your only time to present it. And based on her credible fear interview, you'd think her claim was solely based on her religion, not based on an imputed political opinion, which she appears to try and raise later on. Well, she's certainly sophisticated at 20, coming from Iraq, to know the difference between imputed political opinion and religion. Is that your point? Well, Your Honor, I'm not saying that she necessarily, but when asked, you know, was anybody in your family harmed, I would assume that you would remember that your father had been detained for 40 days, showed signs of torture, and had been mistreated by the Iraqi authorities. Counsel, I have a focus that's a little bit different from Judge Fisher's. When I saw the part where she said, no, I've never been arrested at any time or any place, to me it looked like it was part of a series of questions about her health, and medicines, and smuggling, to see if there's anything wrong with her. And what she's doing is, like when you get a questionnaire at a job, and it asks you, are all these things wrong with you, and you check the no boxes on all of them. That's the way that looked to me. What I had trouble with was in the part where the lawyers get into it, in the hearing before the IJ, people continue to use the part... Do you have a page number you're referring to? Well, the hearing starts at... And the lawyers use these terms like arrest, and maybe it's there, and you can point me to the correct page. I'm looking for the lawyers to use words that don't involve technicality, like did the police ever take you away? Where did they put you? Did they take you to the police station? Did they make you get in their car? Did they put you in a cell? Did they put you in a jail? Anything that a layman could understand without having any idea of what legal meaning there might be to it. Without knowing what a carry stop is, for example. Did the lawyers ever ask questions in plain English? Your Honor, I can't find one right off the bat, but I'm willing to look while he is... This is your only chance, actually. I don't remember him actually, either a lawyer actually... Or you? No, I don't remember them using words other than detention or arrest. I do not remember either counsel or the immigration judge. I just note, by the way, on 105 that the I.J. listening to this thought the question was whether her father was arrested and had to be corrected by counsel that the question was whether she was arrested. So I suppose if the I.J. had been the witness and had answered the question that he thought he heard, he would have come up with an incorrect answer. Right? In other words, people don't hear things exactly correctly. So not to make too much of the point, but even the I.J. who's sitting there didn't completely hear or understand the question that was asked. So if you look at the totality of the transcript, I get, as Judge Kleinfeld was saying, the impression that there's a big hangup over getting her to say arrested or detained. And she says, look, I was interrogated. And I still keep coming back to my fundamental question is what's in it for her to avoid agreeing that it's an arrest? I just don't understand. Well, Your Honor, I just would like to point out that when there appeared to be discrepancies in the testimony or anything, the immigration judge took pains to say, you know, I have to give you an opportunity to try and explain this. And he did that, I believe, several times during the hearing. Yes. I mean, she was represented by a lawyer before the immigration judge. Well, I look at what he did, and at 107, in your interview with the officer, you said you were arrested in Iraq. So I want to give you an opportunity to explain why you have different answers to the same question. That's what, yes, and I'm not lying. I'm telling you what happened exactly. They took me, i.e., in our language, they arrested me. They kept interrogating me. In our language, arrest. Almost all the night, they were interrogating me. Okay, and then the I.J. says, I still don't understand your answer. You were kept overnight, and you were interrogated, and then starts asking the questions about it. Police station. And the I.J. says, could you explain the inconsistency? I don't know what to tell you. This is the truth. I see it like interrogation only. I don't know. This is called also detention. So to me, it's a battle over the terminology. Well, Your Honor, except that when asked to explain what an arrest was, she testified that it's when you're taken to a police station. They asked her to explain that, and then later on, she said, I was taken to a police station,  and I was arrested. Again, why does she care? I don't even care if she was arrested. All I care about is if there's substantial evidence on the record as a whole to support the I.J.'s conclusion that she lied. And that's what I'm interested in. Well, the government would contend that there is, that the immigration judge's decision can be affirmed, because there is compelling evidence in here that would say that she did not testify credibly and did not present a credible claim. For the record, I think that is the correct standard, and for the record, I think my questions go to that very issue. Thank you, counsel. Just in case anybody ever looks at the record. I think we went through all the time, went over time for both counsel. I'd like to just make one brief remark. No, I don't. If I may. Okay. I was just going to make a personal observation. I've looked at over 100 of these credible fear interviews in Iraqi cases. This is one of the longest ones I've ever seen in terms of how much was actually written on the page. Okay.
judges: Kleinfeld, Fisher, Shadur